IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SCOTT HARDWICK and DAWN HARDWICK, ) ) ) ) Plaintiffs, ) ) v. ) ) CORRECTHEALTH BIBB, LLC, *et al.*, ) ) ) Defendants. ) ) | CIVIL ACTION NO. 5:20-cv-127 (MTT) |

ORDER

Plaintiffs Scott and Dawn Hardwick sued Defendants CorrectHealth Bibb, LLC, ("CorrectHealth"), Sheriff David Davis in his official and individual capacities, District Attorney Investigator Scott Chapman in his individual capacity, Sheriff's Office Financial Investigator Michael Parrott in his individual capacity, and Sheriff's Office Financial Investigations Supervisor Robbie Joiner in his individual capacity, asserting claims of state law negligence, constitutional violations pursuant to 42 U.S.C. §§ 1983 and 1988,[1] and state law theft claims styled as "st[ealing]/conver[sion]" of jewelry. Doc. 59 at 2. Defendants CorrectHealth, Sheriff Davis, Chapman, Parrott, and Joiner moved for summary judgment.[2] For the reasons discussed below, Defendants CorrectHealth's

---

[1] Although the statement of claims provided by the Hardwicks states that each defendant violated the Hardwicks' rights pursuant to 42 U.S.C. § 1988, § 1988 does not create an independent cause of action and will not be addressed in this order. Doc. 59. *See McLaughlin v. Cnty. of LaGrange*, 662 F.2d 1385, N. 1 (11th Cir. 1981).

[2] Defendants Michelle Delatorre and Macon-Bibb County also moved for summary judgment. Docs. 36; 37. Delatorre and Macon-Bibb County were both dismissed with prejudice at the motions hearing. Doc. 60.

and Sheriff Davis's motions for summary judgment are **GRANTED**; the Hardwicks are **ORDERED to show cause within 14 days** why Chapman should not be dismissed with prejudice; and Parrott's, Joiner's, and Chapmans' motions are **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND

In December 2017, Plaintiff Scott Hardwick filed an incident report with the Bibb County Sheriff's Office in which he claimed thousands of dollars in antique and collectible coins had been fraudulently charged to his credit card.  Docs. 35-2 ¶¶ 1-2; 47-1 ¶¶ 1-2. [3]  Upon investigating these claims and finding evidence that placed Scott Hardwick himself under suspicion of fraud, Bibb County Sheriff's Office Financial Investigator Michael Parrott obtained a warrant to search the Hardwick residence.  Docs. 35-2 ¶¶ 4-5; 47-1 ¶¶ 4-5.  The warrant listed for seizure antique coins, receipts for such coins, cellphones, computers, internet and cell phone service bills, and other items related to the suspicious antique coin transactions.  Doc. 37-10.

Parrott, joined by his supervisor, Robbie Joiner, executed the search warrant on March 2, 2020.  Docs. 46-2 ¶ 3; 49-1 ¶ 3.  During the search, Parrott and Joiner saw in plain sight a large number of antique coins and at least fifteen firearms.  Docs. 35-2 ¶ 7; 47-1 ¶ 7.  Many of the guns were stored with auction tags still attached, the same manner the coins central to the search were stored.  Docs. 35-2 ¶ 9; 37-11 at 54-55.  Parrott and Joiner ran the guns' serial numbers through the Georgia Crime Information

---

[3] The Hardwicks dispute that Scott Hardwick filed the police report because of fraudulent charges, claiming that he filed the report because coin companies were sharing his purchasing information among themselves.  Doc. 47-1 at ¶ 1.  However, the Hardwicks concede that there were charges to Scott Hardwick's credit card for coins and that Scott Hardwick told Parrott that he had not purchased the coins.  *Id.* at ¶¶ 2-3.

Center and found that one gun was reported stolen.  Doc. 35-2 ¶ 8.[4]  Another gun's serial number was filed off or worn down.  Docs. 35-2 ¶ 8; 37-8 at 61:21-23; 37-11 at 67:13-68:5.  Various medications were in plain sight, including more than two thousand Xanax pills and hundreds of hydrocodone-acetaminophen pills, with dates of prescription that were close to each other.  Docs. 46-2 ¶ 5; 49-1 ¶ 5; 37-2 ¶ 8; 50-1 ¶ 8.

Parrott and Joiner contacted the Bibb County Sheriff Office's liaison to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") for guidance on how to handle the firearms and were instructed to seize the guns.  Docs. 35-2 ¶ 10; 47-1 ¶ 10.  Parrott and Joiner also contacted the Bibb County Sheriff Office's specialized drug squad regarding the observed medications.  Docs. 35-2 ¶ 15; 47-1 ¶ 15.  The drug squad responded to the residence and seized the medications.  Docs. 37-2 ¶ 29; 50-1 ¶ 29.  All of the Hardwicks' prescriptions were taken, along with fourteen firearms, and various items irrelevant to this case.  Doc. 1-1 at 3.

During the search, Parrott asked Scott Hardwick for the combination to the Hardwicks' safe.  Docs. 37-2 ¶ 23; 50-1 ¶ 23.  Scott Hardwick gave Parrott the combination, and Parrott opened the safe, where he found more medications.  *Id.*  The Hardwicks claim jewelry belonging to Dawn Hardwick was taken from the safe without being logged in the seizure inventory.  Docs. 59 at 2; 37-8 at 52:2-10, 37-11 at 54:5-18.  Parrott and Joiner deny ever seeing, much less seizing, jewelry at the residence, aside from watches which were properly added to the inventory log.  Doc. 35-2 ¶ 36.  On March 21, 2018, Parrott obtained a second warrant to search the Hardwick residence

---

[4] The Hardwicks deny this statement of fact on the basis that all of their guns were legally owned.  Doc. 47-1 ¶ 8.  This denial does not address the heart of the statement—that one of the guns was *reported* stolen.  Docs. 35-3 ¶ 7; 35-4 ¶ 10.  That is undisputed.

and more evidence connected to the investigation was seized.  Docs. 37-2 ¶ 38; 50-1 ¶ 38.

The Hardwicks maintain that Investigator Scott Chapman participated in both searches at the Hardwick residence.  Docs. 1-1 at 3; 59 at 6-7.  The Hardwicks claim they recognized Chapman at each search, because Chapman was a friend of the Hardwicks' youngest son.  Docs. 37-8 at 36:5-18; 37-11 at 34:17-36:5.  However, at all relevant times, Chapman was not employed by the Sheriff's Office, but rather by the Bibb County District Attorney's Office.  Docs. 37-2 ¶ 49; 50-1 ¶ 49.  In his capacity as an investigator for the District Attorney, Chapman sometimes executed search warrants but only on behalf of the District Attorney's Office, which had no involvement with the searches of the Hardwick residence.  Docs. 37-2 ¶ 52; 50-1 ¶ 52.  Chapman and Parrott both deny that Chapman was present for either search.  Docs. 37-2 ¶ 53; 37-9 at 72.

Scott Hardwick was arrested on March 21, 2018.  Docs. 46-2 ¶ 8; 49-1 ¶ 8.  The following day, Scott Hardwick was released on bond.  Docs. 46-2 ¶ 9; 49-1 ¶ 9.  During his time in the Bibb County Jail, Scott Hardwick was examined twice by physicians employed by CorrectHealth—at intake and the next morning.  Docs. 36-2 ¶¶ 6, 9; 48-1 ¶¶ 6, 9.  During his first meeting with a healthcare provider through CorrectHealth, Scott Hardwick identified his pharmacy and executed a "Release of Information" to allow the jail to start verifying his prescriptions in accordance with CorrectHealth's standard procedure for verifying detainees' reported health conditions and medications.  Docs. 36-2 ¶¶ 4, 17-19; 48-1 ¶¶ 4, 17-19.  Scott Hardwick was released before his third scheduled meeting with a physician on March 23, 2018.  Docs. 36-2 ¶ 8; 48-1 ¶ 8.  Scott Hardwick testified that he suffered "withdrawals" due to a lack of medication during his

time in jail, that CorrectHealth actively kept him from receiving his prescribed medical care, and that he was unable to seek help from a physician while he suffered withdrawal symptoms.  Docs. 48-1 ¶¶ 21-23; 37-8 at 126:5-134:10.  The record contains no diagnosis of injury resulting from denial of medication during Scott Hardwick's time in the Bibb County Jail.  Docs. 36-2 ¶ 30; 48-1 ¶ 30.

## II. SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's

case.'"  *Id.* (quoting *Celotex*, 477 U.S. at 324) (alterations in original).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings."  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

### III.   DISCUSSION

#### A.   CorrectHealth is entitled to summary judgment

The Hardwicks claim that CorrectHealth committed "state law negligence" because it failed to provide appropriate medical care to Scott Hardwick during his stay in the Bibb County Jail.  Doc. 59 at 5.  The Hardwicks further argue CorrectHealth's failure to provide care violated Scott Hardwick's rights pursuant to 42 U.S.C. § 1983.  Both claims are without merit.

*1. Medical malpractice claims fail without expert testimony*

The Hardwicks' state law claim alleging improper medical care can only be read as a medical malpractice claim.  Doc. 59 at 5.  Under Georgia law, actions requiring the exercise of professional judgment constitute professional malpractice rather than simple negligence.  *Mendoza v. Pennington*, 239 Ga. App. 300, 519 S.E.2d 715, 716 (1999) (citations omitted).  The gist of this claim is that CorrectHealth physicians and perhaps other staff did not prescribe and administer medication.  The decision whether to administer medication requires professional judgment and is therefore a matter of medical malpractice, not simple negligence.  *Carter v. Cornwell*, 338 Ga. App. 662, 665, 791 S.E.2d 447, 450 (2016) (*quoting Dent v. Mem. Hosp. of Adel*, 270 Ga. 316, 318, 509 S.E.2d 908, 910 (1998) (explaining that the trial court did not err in dismissing professional malpractice claim for failure to file an expert affidavit along with complaint)).

Because the Hardwicks have no expert testimony, their medical malpractice claim must fail.  In order to sustain a medical malpractice claim under Georgia law, a plaintiff must establish three essential elements: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained." *Hawkins v. Greenberg*, 166 Ga. App. 574, 575, 304 S.E.2d 922, 923 (1983) (citing *Maddox v. Houston Cnty. Hosp. Auth.*, 158 Ga. App. 283, 284, 279 S.E.2d 732, 734 (1981)).  Expert testimony is required to prove breach of the applicable standards of care. *See Hayes v. Brown*, 108 Ga. App. 360, 363, 133 S.E.2d 102, 104-105 (1963); O.C.G.A. § 9-11-9.1.  Further, except in the rarest of cases, expert testimony is required to establish proximate cause, because "the question of whether the alleged professional

negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson." *Zwiren v. Thompson,* 276 Ga. 498, 500, 578 S.E.2d 862, 865 (2003). The Hardwicks have no expert evidence that CorrectHealth doctors or staff breached any standard of care or that Scott Hardwick suffered any injury caused by such a breach. CorrectHealth on the other hand, has provided expert evidence that its staff met the standard of care. Doc. 36-1 at 12, Doc. 36-6 at 2. Accordingly, the Hardwicks' medical malpractice claim fails.

*2. § 1983 claim fails under Monell analysis*

CorrectHealth, as the jail healthcare provider, is the "functional equivalent" of the municipality it serves by virtue of its contract with the county and the state function it performs. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). As such, CorrectHealth receives the same protection from vicarious liability or *respondeat superior* claims as a traditional state actor. *Monell v. Dep't of Soc. Servs. of NY*, 436 U.S. 568, 691 (1978). To successfully assert a § 1983 claim against CorrectHealth, the Hardwicks must demonstrate: (1) a violation of Scott Hardwick's constitutional rights, (2) that CorrectHealth had a policy or custom that constituted deliberate indifference to that constitutional right, and (3) that the policy or custom caused the constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The Hardwicks make no such showing.

First, the Hardwicks have no evidence that Scott Hardwick's medical treatment during his confinement violated his constitutional rights. And on this record, it is difficult to see how they could even allege a constitutional violation. Scott Hardwick spent little more than twenty-four hours in Bibb-County jail, during which time he was examined

twice by physicians.  Docs. 36-2 ¶¶ 6, 9; 48-1 ¶¶ 6, 9.  A third examination was scheduled, but Scott Hardwick was released before it could take place.  Docs. 36-2 ¶ 8; 48-1 ¶ 8.  Scott Hardwick did not receive his medications while in jail, but CorrectHealth was in the process of verifying Scott Hardwick's prescriptions through the "Release of Information" that he executed during his first examination.  Docs. 36-2 ¶¶ 4, 17-19; 48-1 ¶¶ 4, 17-19.  At most, the Hardwicks allege the delay of medication by a matter of hours while a healthcare provider verified Scott Hardwick's prescriptions—this does not, on this record, amount to a constitutional violation.  For example, there is no evidence that the medications were immediately needed because of a dire condition or that immediate injury would result unless the medications were provided.  *See generally Williams v. Arnold*, 207 Fed. App'x. 980 (11th Cir. 2006) (finding no constitutional violation when a jail inmate suffering from a "rare" and "serious" disease was forced to go without his necessary medication for various lengths of time, with seven consecutive days being the longest period).

Even if the Hardwicks had established a constitutional violation, they have not established any basis for *Monell* liability.  "A single incident of a constitutional violation is insufficient to prove a policy or custom." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011).  Absent "a series of constitutional violations from which deliberate indifference can be inferred, the plaintiff[] must show that the policy itself is unconstitutional." *Id.* (alteration in original).  The Hardwicks have not identified any policy of CorrectHealth as unconstitutional.  Indeed, it seems impossible that the Hardwicks could make such a showing, as expert testimony establishes CorrectHealth's practices as the standard of care.  Docs. 36-1 at 12; 36-6 at 2.  In short, the Hardwicks

point to no act or omission on the part of CorrectHealth that caused a violation of Scott Hardwick's constitutional rights.

Because the undisputed facts show that the Hardwicks cannot establish a constitutional violation, and, even if they could, they have not established any basis for *Monell* liability on the part of CorrectHealth, CorrectHealth's motion for summary judgment is **GRANTED.**

**B.    Sheriff Davis is entitled to summary judgment**

The Hardwicks base their claims against Sheriff Davis, who is sued in both his official and individual capacities, on the following acts or omissions: "Defendant Davis failed in ensuring medical care was provided to plaintiff Scott Hardwick.  Furthermore, Defendant Davis had policies in place that allowed or directed the seizure of medication and guns from plaintiff which led to the rights violations of plaintiff."  Doc. 59 at 9.  These claims are without merit.  Sovereign immunity bars the Hardwicks' state law claims against Sheriff Davis in his official capacity, and official immunity bars the state law claims against Sheriff Davis in his individual capacity.  The Hardwicks' § 1983 claims against Sheriff Davis in his official capacity fail because he was acting as an arm of the state.  Even if the § 1983 claims could be brought against Sheriff Davis in his official capacity, the claims would not survive *Monell* analysis.  Finally, § 1983 claims against Sheriff Davis in his individual capacity are barred by qualified immunity.

   1. *Sovereign immunity bars the Hardwicks' state law claims against Sheriff Davis in his official capacity*

Sovereign immunity extends to all departments and agencies of the State of Georgia through its constitution.  Ga. Const., art. I, § 2, para 9(e).  The Supreme Court

of Georgia has extended this immunity to counties, and by extension, to county sheriffs sued in their official capacity. *Gilbert v. Richardson*, 264 Ga. 744, 754; 452 S.E.2d 476, 484 (1994). For the Hardwicks to establish that Sheriff Davis's sovereign immunity has been waived for the purpose of their state law claims against him, the Hardwicks must either (1) identify a statute which expressly waives the immunity or (2) demonstrate that an insurance policy is in place which covers the incident underlying their claim. *Woodard v. Laurens Cnty.*, 265 Ga. 404, 406, 456 S.E.2d 581; O.C.G.A. § 36-33-1(a). The Hardwicks have made neither such showing.[5] Therefore, sovereign immunity bars the Hardwicks' state law claims against Sheriff Davis in his official capacity.

  2. *Official immunity bars the Hardwicks' state law claims against Sheriff Davis in his individual capacity*

"Official immunity … is applicable to government officials and employees sued in their individual capacities." *Stone v. Taylor*, 233 Ga. App. 886, 888, 506 S.E.2d 161, 163 (1998). Sheriff Davis is "entitled to [official immunity] for the negligent performance of discretionary acts within the scope of [his] authority" and may only be held personally liable if he "act[ed] with actual malice or an intent to injure when performing [… those] discretionary acts." *Roper v. Greenway*, 294 Ga. 112, 113, 751 S.E.2d 351, 352 (2013) (citing *Phillip v. Hanse*, 281 Ga. 133, 637 S.E.2d 11 (2006)). Providing policies and procedures for his office's execution of search warrants is a discretionary act. *See Lowe*

---

[5] The Hardwicks did allege in their complaint that Macon-Bibb County, a former defendant in the case, had waived its sovereign immunity through purchase of liability insurance that covered Sheriff Davis and the deputy sheriffs of his office. However, this allegation does not meet the standards of identifying an actual policy which provides liability coverage for the Hardwicks' specific claims such that sovereign immunity is waived for Sheriff Davis. Moreover, the Hardwicks failed to respond to Sheriff Davis's argument regarding this point in their response to his motion for summary judgment nor did the Hardwicks' counsel cite the insurance policy at the hearing on the motions for summary judgment. Accordingly, summary judgment on this issue for Sheriff Davis is warranted. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598-99 (11th Cir. 1995).

*v. Jones Cnty.*, 231 Ga. App. 372, 373, 499 S.E.2d 348, 350 (1998) (holding that the operation of a sheriff's department is a discretionary act). The Hardwicks argue that the provision of medical care through CorrectHealth is a ministerial act that does not entitle him to official immunity.[6] Doc. 49 at 9. However, the very case cited by the Hardwicks establishes that under Georgia law, the decision to contract the jail's medical care to a healthcare provider is a "determination of *what* medical treatment to provide" and is therefore "an act of discretion subject to official immunity." *Graham v. Cobb Cnty.*, 316 Ga. App. 738, 742-743, 730 S.E.2d 439, 443-444 (2012) (holding that the determination of how to provide adequate medical care through a healthcare provider involved use of discretion by the sheriff).

The Hardwicks have made no claim of actual malice or intent to injure on the part of Sheriff Davis, and the record shows no basis for such a claim. Accordingly, the state law claims against Sheriff Davis in his individual capacity are barred by official immunity.

> 3. *Sheriff Davis is not subject to § 1983 claims in his official capacity, as he was acting as an arm of the state*

Sheriff Davis raised the defense of Eleventh Amendment immunity in his answer to the Hardwicks' complaint, but he did not raise Eleventh Amendment immunity in his motion for summary judgment or otherwise argue that Sheriff Davis could not be subjected to § 1983 liability. Doc. 10 at 3. At oral argument, the sheriff's counsel suggested that Sheriff Davis did not contend Eleventh Amendment immunity barred claims against him in his official capacity because he may have waived immunity when

---

[6] Alternatively, the Hardwicks may mean to argue that Sheriff Davis's provision of healthcare is a ministerial act because he failed to provide any healthcare, but that argument fails against CorrectHealth's documented provision of care to Scott Hardwick.

he removed this case to federal court. The assumption inherent in that concern is that it is the Eleventh Amendment which bars § 1983 claims for damages against sheriffs in their official capacities. Although it is understandable why one would draw that assumption, that is not quite right.[7] While it is commonly said that sheriffs, as arms of the state, enjoy Eleventh Amendment immunity, it is not necessary in a § 1983 action for damages to reach the question of Eleventh Amendment immunity. States—and, by extension, arms of the state— are not "persons" within the meaning of § 1983.[8]  *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 63 (1989). And § 1983 subjects only persons to monetary liability for violations of constitutional rights. Consequently, it is simply not possible to hold a sheriff in his official capacity liable for monetary damages under § 1983 if he is acting as an arm of the state. However, the Court recognizes that the Hardwicks have not had an opportunity to address this issue. Accordingly, if the Hardwicks believe that Sheriff Davis, in his official capacity, is a "person" subject to § 1983 liability, they may file a supplemental brief within 14 days of the entry of this order.

---

[7] For the most part, it may only be of academic interest that courts repeatedly dismiss § 1983 claims against states and state agents, in their official capacities, on Eleventh Amendment grounds rather than because they are not "persons" subject to § 1983 liability for damages. *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301-2 (11th Cir. 2007); *Pellitteri v. Prine*, 776 F.3d 777, 779-80 (11th Cir. 2015). That is because the result is the same either way— the claims get dismissed. In the case of removed actions, however, it is important to remember why states are not subject to § 1983 liability. When a state removes an action to federal court, the state waives its Eleventh Amendment immunity, and thus, if the Eleventh Amendment were the state's only shield from § 1983 liability, removal would likely deprive the state of that protection. But as the Supreme Court made clear when it held that removal waives Eleventh Amendment immunity, that waiver has no bearing on § 1983 claims for monetary damages against states because there are no "valid [§ 1983] claim[s]" for damages against states. *Lapides v. Bd. of Regents of Uni. Sys. of Ga.*, 535 U.S. 613, 617 (2002).

[8] A sheriff providing healthcare for inmates and establishing fundamental procedures for searches and seizures within his office is acting as "an arm of the State." *See Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003); *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.,* 400 F.3d 1313, 1325 (11th Cir. 2005) ("authority and duty [of the sheriff] to administer the jail in his jurisdiction flows from the State, not [the] County") (quoting *Manders,* 338 F.3d at 1315) (second alteration in original);  *see also Scruggs v. Lee*, 256 Fed.App'x 229, 231-32 (11th Cir. 2007) ("Although the policy [here] is different, [the Sheriff's] policy and procedure ... are functionally the equivalent of the use-of-force policy in *Manders*.").

But even considered on their merits, the Hardwicks' § 1983 claims against Sheriff Davis in his official capacity cannot succeed, because the Hardwicks have not met the burden of establishing such a claim under *Monell*. *See McDowell*, 392 F.3d at 1289. The Hardwicks have not proven a constitutional violation nor identified any policy or custom which caused their alleged constitutional violations. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law"). Accordingly, the § 1983 claims against Sheriff Davis in his official capacity fail.

> 4. *Qualified immunity bars § 1983 claims against Sheriff Davis in his individual capacity*

Sheriff Davis is entitled to qualified immunity with respect to the Hardwicks' § 1983 claims in his individual capacity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1291 (11th Cir. 2009)). To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation." *Lewis*, 561 F.3d at 1291. This two-step analysis may be done

in whatever order is deemed most appropriate for the case. *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The clearly established law must provide a defendant with "fair warning" that her conduct deprived the plaintiff of a constitutional right.[9] *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002). A plaintiff "can demonstrate that the contours of the right were clearly established in several ways." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). First, a plaintiff can show that "a materially similar case has already been decided." *Id.* Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id*. (internal quotation marks and citation omitted). "Finally, the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'" *Id.* (alterations in original). "[E]xact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

Here, the Hardwicks have identified no materially similar case, nor pointed to a broader, clearly established principle that should control this case, nor demonstrated any violation so obvious that precedent is unnecessary. *See Hope*, 536 U.S. 730, 745-46 (holding that prior Eighth amendment decisions and a warning from the Department of Justice, as well as the obvious cruelty of leaving a prisoner tied to a hitching post for extended periods of time without basic necessities, should have put a reasonable officer on notice that such punishment was unconstitutional). Therefore, qualified immunity

---

[9] Clearly established law in this circuit means decisions of the United States Supreme Court, the Eleventh Circuit, and the highest court of the pertinent state. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

bars the Hardwicks' § 1983 claims against Sheriff Davis in his individual capacity. Accordingly, the Sheriff's motion for summary judgment is **GRANTED.**

C.     **Claims against Defendants Chapman, Parrott, and Joiner**

*1. Defendant Chapman's involvement*

The Hardwicks insist that Scott Chapman was present for both searches of their home.  Docs. 1-1 at 3; 59 at 6-7.  But the record, apart from the Hardwicks' allegations, does not support this contention.  Parrott, the deputy in charge of the search, and Chapman himself have both testified that Chapman was not present for either of the searches.  Docs. 37-2 at ¶ 53; 37-9 at 72.

Moreover, even if Chapman was at the Hardwick residence, the Hardwicks do not say what he did or what his role was.  With no explanation, they claim he "failed to intervene as constitutionally required." Doc. 59 at 6.  But the Hardwicks do not allege how Chapman, as an employee of the District Attorney's Office, was acting under color of law if he was present.  Similarly, the Hardwicks provide no evidence or legal basis for the state law theft claim against Chapman.  The jewelry was allegedly taken from the Hardwicks' safe, which the Hardwicks claim Parrott opened.  Docs. 37-2 ¶ 23; 50-1 ¶ 23.  Nothing in the record connects Chapman to the safe.  Indeed, throughout their pleadings, the Hardwicks assign the responsibility for both the constitutional violations and the theft to the Sheriff's Office, through its deputies and its investigation.  If the deputies did commit unconstitutional acts and state law theft as alleged by the Hardwicks, it is unclear what liability that would impose upon a District Attorney

investigator—allegedly present without any evidence of official purpose, with no claims alleging any actions on his part.[10]

Accordingly, the Hardwicks are **ORDERED to show cause within fourteen days** as to the legal and factual bases, including any basis for alleging Chapman was acting under color of law, for any claims they now, in good faith, wish to maintain against Chapman.

*2.  § 1983 claims, other than the theft claim, are barred by qualified immunity*

Executing search warrants is a discretionary act under Georgia law.  See *Marshall v. Browning*, 310 Ga. App. 64, 67, 712 S.E.2d 71, 74 (2011) (concluding a police detective, was acting within her discretionary authority in investigating the case, obtaining search and arrest warrants, and in executing those warrants).  Accordingly, the burden falls to the Hardwicks to demonstrate that the deputy defendants violated a clearly established constitutional right when, after consulting with the ATF, they seized the Hardwicks' firearms and when they called the drug squad, whose agents seized the suspicious drugs the deputies discovered.  *McClish*, 483 F.3d at 1237.  The Hardwicks have not even tried to meet this burden. Rather, they rest on "the obvious and plain meaning of the Fourth Amendment."  Doc. 59 at 2.  Given the undisputed facts here, nothing in the Fourth Amendment would have put the deputies on notice that they acted unconscionably with regard to the seized guns and drugs.

Accordingly, Defendants Chapman,[11] Parrott, and Joiner's motion for summary judgment as to the Hardwicks' § 1983 claims against them is **GRANTED**.

---

[10] The Hardwicks do claim that Chapman put their son in handcuffs during one of the two searches.  Doc. 50-1 at ¶ 57.  However, they raise no claim related to this alleged act.

[11] Even if the Hardwicks attempt to show cause for maintaining claims against Chapman, their § 1983 claims arising from the seizure of the guns and drugs are **DISMISSED with prejudice**.

### 3. *"Stealing/conversion" of jewelry claim remains*

The record is incredibly sparse on this issue. The only evidence that the Hardwicks present for their claim is the jewelry's absence after the search. As Dawn Hardwick put it during her deposition, "[the jewelry] was in the safe before Parrott and them opened it, and it's not in the safe now." Doc. 37-11 at 54:16-18. This conduct, if proven, would be "a deliberate attempt to do wrong," constituting actual malice and negating official immunity. *Murphy v. Bajjani*, 282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007). And the Court accepts that it is clearly established that officers cannot, consistent with the Constitution, steal while executing a search warrant. Although this is a slender thread, the claim survives motion for summary judgment at this stage of the case. Summary judgment on the claims arising from alleged jewelry theft is **DENIED without prejudice.**

## IV.   CONCLUSION

For the reasons noted, CorrectHealth's motion for summary judgment (Doc. 36) is **GRANTED**. Sheriff Davis's motion for summary judgment (Doc. 46) is **GRANTED**. The Hardwicks are **ORDERED to show cause within 14 days** why Chapman should not be dismissed with prejudice. Parrott, Joiner, and Chapman's motions for summary judgment (Docs. 35 and 37) are **GRANTED in part** and **DENIED in part.** The remaining claims in this case are the claims against Parrott for the alleged theft of jewelry and the claim against Joiner for not intervening, somehow, to stop the theft. The Clerk of Court is **DIRECTED** to delay entry of judgment until further instruction from the Court.

**SO ORDERED**, this 15th day of February, 2022.

                                          <u>S/ Marc T. Treadwell</u>
                                          MARC T. TREADWELL, CHIEF JUDGE
                                          UNITED STATES DISTRICT COURT